**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Criminal Action No. 10-cr-00327-MSK**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.

1. MARTIN JAVIER ALAMOS-DELGADO,
2. MARTIN JAVIER ALAMOS-GARCIA,
3. JAVIER BATISTA-CERVANTES,
4. **HECTOR ARMONDO CHAVEZ,**
5. MAURO HERNANDEZ-RENTERIA,
6. DIONISIO SALGADO, and
7. CALVIN WAYNE SKIDMORE,

      **Defendants.**

---

**OPINION ADDRESSING GOVERNMENT'S *JAMES* PROFFER**

---

**THIS MATTER** comes before the Court for a provisional ruling regarding the admissibility of statements contained in the Government's *James* proffer **(#169)** pursuant to Fed. R. Evid. 801(d)(2).[1]

The Indictment charges Mr. Chavez with three counts related to his participation in a conspiracy to distribute controlled substances from the United States into Canada.[2] The Government contends that, together with his co-defendants and others, Mr. Chavez imported more than five kilograms of cocaine for distribution from Mexico and exported it to Canada by way of Colorado and Montana. Mr. Chavez moved for a *James* determination and, consistent

---

[1] Only Mr. Chavez moved for a *James* determination **(# 116)**.

[2] Count One charges Mr. Chavez with participation in the conspiracy to distribute cocaine, and Counts Ten and Twelve charge Mr. Chavez with using a communication facility in committing the conspiracy.

1

with the Court's protocols, the Government has submitted a *James* proffer regarding co-conspirator statements it wishes to offer at trial against Mr. Chavez.

**I.     Legal Standards**

Fed. R. Evid. 801(d)(2)(e) provides that a statement "is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Before admitting co-conspirator statements under Rule 801(d)(2)(e), the Court must determine that: (i) a conspiracy existed; (ii) the declarant and defendant were both members of the conspiracy; and (iii) the statements were made in the course of and in furtherance of the conspiracy. *U.S. v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994). The Court's makes this determination on the strength of the Government's proffer, and, as a result, the determination is "provisional," subject to the Government offering up sufficient, conforming evidence of the existence, composition, and scope of the conspiracy at trial. *Id.* at 1491.  The Government bears the burden of demonstrating each of the three elements by a preponderance of the evidence. *Bourjaily v. U.S.*, 483 U.S. 171, 175 (1987); *United States v. Perez*, 989 F.2d 1574, 1577 (10th Cir. 1993).

**II.    Analysis**

The Government moves for a preliminary finding of admissibility as to statements drawn from thirty-six conversations it seeks to introduce at trial.

A. Existence of a Conspiracy

As a threshold matter, the Government is required to prove, by a preponderance of the evidence, the existence of a conspiracy. *See United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1988); *see also United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1978). A conspiracy exists when: (i) the defendant agrees with another person to violate the law; (ii) the

defendant knows of the essential objective of the conspiracy; (iii) the defendant knowingly and voluntarily participates in actions that further the conspiracy's objective; and (iv) there is interdependence among the conspirators. *U.S. v. Edwards*, 69 F.3d 419, 430 (10th Cir. 1995).

Evidence of the conspiracy, and the defendant's participation in it, need not be direct; rather, a conspiracy may be inferred from circumstantial evidence. *Martinez*, 825 F.2d at 1452. Particularly, a defendant's knowledge in the conspiracy is often presumed based on his actions in participation of the conspiracy. *See United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990). The Court may consider the offered statements themselves, as long as they are coupled with some independent evidence, to determine whether the existence of a conspiracy has been established. *See United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

As proof of a conspiracy and Mr. Chavez's participation therein, the Government makes the following proffer, which the Court accepts as true for purposes of the matter before it. The Drug Enforcement Agency (DEA) began investigating an Avon, Colorado resident named Dionisio Salgado, whom it believed to be distributing cocaine in Colorado. Agents determined that Mr. Salgado's cocaine supplier was Mr. Alamos-Garcia. Mr. Alamos-Garcia and his father, Mr. Alamos-Delgado, obtained cocaine from "Panzon" in Mexico. Agents obtained authorization to wiretap Mr. Alamos-Garcia's cellular phone (TT5).

From interceptions of wire communications from TT5, agents learned that Mr. Alamos-Garcia was also supplying cocaine to Canadian dealers, including Mr. Chavez, Mr. Batista-Cervantes, and Mr. Hernandez-Renteria. By intercepting calls between Mr. Alamos-Garcia and Mr. Chavez, as well as the six other named co-conspirators, the Government learned that Mr. Skidmore obtained the cocaine in Colorado and then was responsible for getting it across the Canadian border. The Government intercepted calls over TT5 during which "the men discussed

the status of the cocaine shipment, tracking [Mr.] Skidmore's progress through the United States to Canada with the cocaine hidden in his vehicle." Later, when Mr. Skidmore was caught crossing the border, "the men discussed their concern about getting caught and what they should do."

For purposes of a *James* proffer, the Government's allegations are sufficient to identify an agreement to commit a crime – namely, to ship cocaine from Mexico, through the United States, for distribution in Canada.[3] Mr. Chavez participated in that conspiracy (and therefore knew of its existence and its objective) by distributing the cocaine in Canada, and there was interdependence between the conspirators – Mr. Alamos-Garcia and Mr. Alamos-Delgado obtained cocaine from "Panzon" and facilitated importation of the cocaine into the United States, Mr. Skidmore received the cocaine in the United States, then transported it to Canada for delivery to Mr. Chavez and others.

B.  Specific Statements

The Court turns to thirty-six statements the Government seeks to admit at trial under Rule 801(d)(2)(E).  Before doing so, however, the Court observes that several of the "statements" are simply a generalized summary of a conversation intercepted over TT5.  For example, the Government's recitation of "Statement 2" reads "intercepted conversation between Alamos-Garcia and Alamos-Delgado discussing the status of Skidmore." "Statement 18" reads "Intercepted conversation between Alamos-Garcia and Batista discussing Skidmore's status and what they should do." By summarizing or describing the conversation, rather than identifying the statements that will be offered at trial, the Government has neither provided the Court with the actual evidence that will be offered - the statements themselves – nor has the Government

---

[3] In the Indictment, the Government states that the conspiracy involving Mr. Chavez occurred from at least December of 2009 through June of 2010.

4

provided sufficient evidence to determine whether the specific statements are in furtherance of the drug trafficking conspiracy.

As a consequence, the Court cannot determine whether particular "statements" are provisionally admissible. Accordingly, Mr. Chavez' objections are sustained as to **Statements 2, 3, 13, and 28 because the Government has not made a sufficient showing. Admission of these statements is denied**. (The Court does not opine at this time whether the Government may, at trial, seek reconsideration of this ruling and admission of these statements via a more complete proffer.)

Regarding the remainder of the Statements, Mr. Chavez raises two objections – that there is insufficient evidence to show (i) that he was a participant in the same conspiracy as the declarants, or to show (ii) interdependence between Mr. Chavez and Mr. Alamos-Garcia, Mr. Alamos-Delgado, Mr. Batista-Cervantes, Mr. Skidmore and "Panzon."  Having determined that the Government made a sufficient provisional demonstration that a conspiracy involving Mr. Chavez and the other named conspirators existed, and that there was interdependence among the conspirators,[4] the Court overrules these objections. Thus, the Court finds that **Statements 1, 4, 5-12, 14-27, and 29-36** are **preliminarily admissible**, assuming the Government demonstrates at trial that they are in furtherance of the conspiracy.

---

[4] The Court does not agree with Mr. Chavez's assertion that there is insufficient evidence tying him to the "Mexican" conspiracy. The Government alleges that the cocaine which eventually ended up in Mr. Chavez's possession in Canada, was originally supplied by Panzon, Mr. Alamos-Delgado, and Mr. Alamos-Garcia in Mexico. Thus, there is interdependence between Mr. Chavez and these suppliers, regardless of whether, as Mr. Chavez contends, they are in different countries. Without the Mexican suppliers, Mr. Chavez would have received cocaine in Canada.

## CONCLUSION

For the foregoing reasons, the Court **provisionally admits Statements 1, 4, 5-12, 14-27, and 29-36** under Rule 801(d)(2)(E). The Court **denies admission of Statements 2, 3, 13, and 28.**

DATED this 3rd day of November, 2015.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Court